**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**LORETTA P., et al.,**

                             **Plaintiffs,**               **04-CV-00001A(Sr)**

**v.**

**THE BOARD OF EDUCATION**
**OF THE CHEEKTOWAGA CENTRAL**
**SCHOOL DISTRICT,**

                             **Defendant.**

_____

_____

## REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b).  Dkt. #4.


Currently before the Court is defendant's motion for summary judgment dismissing plaintiffs' complaint seeking an award of reasonable attorneys' fees, costs and expenses, plus interest, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B), on the ground that plaintiffs are not prevailing parties as that term is defined under the IDEA.  Dkt. #16.  For the following reasons, it is recommended that defendant's motion be denied.


## BACKGROUND

In the Fall of 1998, Adam, a seventh-grade student, transferred to the Cheektowaga Central School District ("District"), was classified as emotionally disturbed

by the District's Committee on Special Education ("CSE"), and placed in a BOCES self-contained 6:1+1 classroom.  Dkt. #18, ¶ 4.  Adam was removed from this placement in December of 1999, as an eighth grade student, due to increasingly impulsive and occasionally violent behavior.  Dkt. #18, ¶ 4.  For the ninth grade, Adam was placed in the Baker Victory Day Treatment Program ("Baker Victory"), which offered a 12:3+1 classroom structure.  Dkt. #18, ¶ 5.

Baker Victory discharged Adam from their program due to excessive absenteeism shortly before the beginning of the September, 2001 school year, in which Adam was to repeat the ninth grade.  Dkt. #18, ¶ 8.  The District was unable to secure an appropriate placement for Adam before the school year commenced and concedes that it violated the IDEA by placing Adam in general education classes with consultant teacher services at the District's High School without reconvening the CSE or amending the individualized education plan ("IEP"), enacted on April 26, 2001.  Dkt. #18, ¶¶ 9-10.

Adam's father objected to his son's placement at the High School and requested home instruction.  Dkt. #18, ¶ 11.  While this option was being discussed within the District, plaintiffs' attorney requested an impartial hearing.  Dkt. #18, ¶ 12.  In a letter dated October 4, 2001, plaintiffs' attorney requested an impartial due process hearing "due to, but not limited to, the parents disagreement with the recommendations of the CSE regarding placement, program, IEP, and evaluations."  Dkt. #19, Exh. F, p.1.  Counsel stated that "[t]he solution to the parents disagreements would include but not be limited to, annulment of the current IEP and to reconvene the CSE to develop an

IEP which individually meets Adam's needs with the related service of counseling, vocational school, and placement in a 12:1+1 self contained classroom." Dkt. #19, Exh. F, p.1.

The District agreed to provide home instruction and to reconvene the CSE. Dkt. #18, ¶ 17. On October 25, 2001, the CSE convened with Adam's father and two paralegals from plaintiffs' counsel's office in attendance. Dkt. #18, ¶ 19. Plaintiffs requested additional and updated evaluations, including an occupational therapy evaluation, a speech language evaluation, and a neuropsychological evaluation. Dkt. #18, ¶ 19. The District stated that it would "obtain routine evaluations needed to complete Adam's overdue triennial review" and agreed to pay for the neuropsychologial evaluation by a neuropsychologist of plaintiffs' choice. Dkt. #18, ¶¶ 20-21.

The District presented plaintiffs with an offer of settlement by letter dated January 25, 2002. Dkt. #19, Exh. K. In that letter, the District offered to continue providing home instruction to Adam pending review of the neuropsychological evaluation, the cost of which the District agreed to pay so long as plaintiffs scheduled the examination by February 7, 2002. Dkt. #19, Exh. K, pp.1-2. Without this evaluation, the District stated that it was unable to commit to the provision of counseling, vocational training or a particular classroom structure. Dkt. #19, Exh. K, p.2. In sum, the District proposed "holding all decisions about counseling, curriculum/vocational training and class structure in abeyance until the CSE can

-3-

reconvene to address and take into consideration the results of the updated neuropsychological evaluation."  Dkt. #19, Exh. K, p.2.

By letter dated February 1, 2002, plaintiffs' counsel advised the District that the neuropsychological evaluation had been completed and that, preliminarily, the neuropsychologist "is in agreement that Adam needs a structured setting such as a 1:12+1 [sic] or other appropriate self-contained classroom and agrees that he should be participating in a vocational program."  Dkt. #19, Exh. L, p.1.  Plaintiffs' counsel suggested cancelling the hearing date so that the District could review the forthcoming report and the parties could attempt to reach a settlement.  Dkt. #19, Exh. L, pp.1-2.

The hearing was conducted on February 7, 2002, February 27, 2002 and March 1, 2002, during which time the neuropsychologist's report was provided to the District.  Dkt. #19, Exh. N, p.5.   By Decision dated May 29, 2002, the Impartial Hearing Officer ("IHO"), found that the attendance and notice requirements for the April 26, 2001 CSE meeting were not met; no parent member, special education or regular education teacher was in attendance at the April 26, 2001 CSE meeting as required; the CSE evaluation was not comprehensive prior to the April 26, 2001 meeting; the April 26, 2001 IEP failed to include transition planning and services, including a vocational education or occupational program; the IEP goals were not appropriately measurable and did not include counseling; the parents were not provided progress reports; and Adam's placement was changed without reconvening the CSE.  Dkt. #19, Exh. O; Dkt. #14, Exh. A.  The IHO also noted that

> The unilateral placement of the student in the high school
> with regular class size last fall was never intended to be long
> term, and was a [District] staff mistake.  Supplemental
> services, such as a "consultant teacher" program, may offer
> a new approach to the behavioral problems in this case.  But
> most of the CSE procedural flaws are moot or untimely.

Dkt. #19, Exh. O, p.9.  With respect to the plaintiffs' request for a 12:1:1 self-contained

classroom, the IHO determined that

> The Record does not support the 12:1:1 self-contained
> classroom to be LRE.  The student was barely able [sic] at
> the 12:3+1 which offered more supervision, so it is not clear
> that a reduction in supervision would help.  The request for
> other corrective actions is also too vague to be granted as
> presented.  There cannot be commitment to a 12:1:1 as
> LRE so that
>> a.) the LRE can reflect the new evaluation information;
>> b.) there was no testimony or documentation
>> supporting this parent request;
>> c.) the evidence on Record only supports the
>> initial suitability of a 12:1+3 [sic].

Dkt. #19, Exh. O, p.9.  The IHO directed the CSE to reconvene to develop a new IEP

based upon the new evaluations and to include transition planning and counseling in

the IEP.  Dkt. #19, Exh. O, p.9.  The IHO also directed completion of the "Triennial

Review, which was not done in June 2001."  Dkt. #19, Exh. O, p.9.


## DISCUSSION AND ANALYSIS

Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P.

Rule 56(c) on the ground that plaintiffs are not prevailing parties as that term is defined

under the IDEA.  Dkt. #17.  Alternatively, defendant argues that plaintiffs have not

presented sufficient evidence to support their claim.  Dkt. #17.

Plaintiffs respond that defendant's motion for summary judgment should be denied because: (1) plaintiffs were the prevailing party at the impartial hearing; (2) defendant failed to make a proper settlement offer; (3) plaintiffs were justified in rejecting defendant's settlement offer; and (4) the fees, costs, and expenses that plaintiffs seek are reasonable.   Dkt. #22.  Alternatively, plaintiffs argue that defendant's motion for summary judgment should be denied because there are material facts in dispute.  Dkt. #22.

## Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


**Prevailing Party**

The IDEA aims "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To achieve this goal, educators and parents of a child covered by the IDEA must jointly develop an IEP for each year of the child's education. *Polera v. Board of Educ. of Newburgh*, 288 F.3d 478, 482 (2d Cir. 2002), *citing* 20 U.S.C. §1414(d).


Parents are afforded an array of procedural safeguards designed to help ensure a free and appropriate education for their child, including the right to present complaints and to have those complaints considered in an impartial due process

hearing.  *Id., citing* 20 U.S.C. § 1415 (b)(6) & (f)(1).  At this hearing and throughout the subsequent administrative and judicial appeals process, the school district bears the burden of proving by a preponderance of the evidence that it complied with the procedural requirements of the IDEA and that the IEP was reasonably calculated to enable the child to receive educational benefits.  *See Board of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982); *M.S. ex rel, S.S. v. Board of Educ. of the Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000).  The court, in its discretion, may award reasonable attorneys' fees to the parent of a child with a disability who is a prevailing party in any action or proceeding brought to enforce the child's right to a free and appropriate public education.  20 U.S.C. § 1415(b)(3)(B).

"Plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."  *G.M. ex rel. R.F. v. New Britain Bd. of Ed.*, 173 F.3d 77, 81 (2d Cir. 1999), *quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (internal quotation omitted).  "A plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint, provided the relief obtained is of the same general type."  *Id., quoting Koster v. Perales*, 903 F.2d 131, 134-35 (2d Cir. 1990).  "The most critical factor is the degree of success obtained."  *G.M.*, 173 F.3d at 81, *quoting Texas State Teachers Ass'n*, 489 U.S. at 789.  The relief must take the form of an enforceable judgment on the merits or a court-ordered consent decree; private settlements do not create the required "judicially sanctioned change in the legal

relationship of the parties." *A.R. ex rel. R.V. v. New York City Dep't of Ed.*, 407 F.3d 65, 74 (2d Cir. 2005), *quoting Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 605 (2001).

In applying the prevailing party standard, the Court compares the relief sought by the plaintiffs with the relief obtained as a result of the lawsuit. *G.M.*, 173 F.3d at 81. In their October 4, 2001 request for an impartial due process hearing, plaintiffs sought the following:

1.      annulment of the April 26, 2001 IEP;

2.      reconvening of the CSE to develop an IEP providing:

     a.      counseling;

     b.      vocational school; and

     c.      placement in a 12:1+1 self contained classroom.

Dkt. #19, Exh. F, p.1.

The IHO determined that the April 26, 2001 IEP failed to comply with attendance and notice requirements of the IDEA; was based upon an inadequate evaluation of plaintiffs' son; failed to include transition planning and services; and failed to include appropriately measurable goals. Dkt. #19, Exh. O, p.8. The IHO ordered that the CSE reconvene and specifically directed that "[c]ounseling should be included specifically" in the resulting IEP, "whether in-school or outside it." Dkt. #19, Exh. O, pp.8-9. The IHO further directed that "transition planning and services, including if applicable, a vocational education or occupational program . . . must begin and have a

place in the IEP." Dkt. #19, Exh. O, p.7. However, the IHO denied plaintiffs' request for

a placement in a 12:1+1 self contained classroom, stating:

> The record does not support the 12:1:1 self-contained
> classroom to be LRE. The student was barely able at the
> 12:3+1 which offered more supervision, so it is not clear that
> a reduction in supervision would help. . . . There cannot be
> commitment to a 12:1:1 as LRE so that
> > a.) the LRE can reflect the new evaluation information;
> > b.) there was no testimony or documentation
> > supporting this parent request;
> > c.) the evidence on Record only supports the
> > initial suitability of a 12:1+3 [sic].

Dkt. #1-3, p.9. Overall, therefore, the plaintiffs' succeeded in obtaining everything

requested except the specific classroom structure.


While the District asserts that it was agreeable to reconvening the CSE for

development of a new IEP but was stymied by the delay in obtaining an updated

neuropsychological evaluation, which it blames upon the plaintiffs, this argument

ignores the fact that the IHO determined that the April 26, 2001 IEP was based upon an

incomplete evaluation of plaintiff and that the District failed to complete its Triennial

Review of Adam in June of 2001 as well as the District's concession that it violated the

IDEA by placing Adam in general education classes with consultant teacher services at

the District's High School without evaluating Adam's needs, reconvening the CSE or

amending the April 26, 2001 IEP. Dkt. #18, ¶ 9. Moreover, no one claims that the

District's acquiescence to the parents' request for home instruction was compatible with

the IDEA or Adam's right to an IEP which satisfied the District's obligation to provide a

free and appropriate education. Thus, the record does not reveal that the District acted

in accordance with their obligations under the IDEA until the plaintiffs demanded annulment of the April 26, 2001 CSE and reconvening of the CSE to develop an IEP appropriate to his changed circumstances.

While the determination as to the specific type of counseling or transition planning that should be put in place for Adam would obviously be dependent upon the results of the updated evaluations which were requested following the plaintiffs' demand to reconvene the CSE, the District's offer of settlement stated that it could not commit to providing such services until it received an updated evaluation of Adam's abilities and deficits.  Dkt. #19, Exh. K, p.2.  However, the IHO determined that the District's failure to include transition planning in the April 26, 2001 IEP was "not in full compliance with the Regulations;" transition planning and services, including if applicable, a vocational education or occupational program, "must begin and have a place in the IEP;" and "[c]ounseling should be included specifically, whether in-school or outside it."  Dkt. #19, Exh. O, pp.8-9.   The determination that these services must be incorporated into the IEP constitutes success on a significant issue before the IHO.

## CONCLUSION

Based on the foregoing, it is recommended that the defendant's motion for summary judgment (Dkt. #16), be denied.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of

Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report,

Recommendation and Order), may result in the District Judge's refusal to consider the

objection.

The Clerk is hereby directed to send a copy of this Order and a copy of

the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:        Buffalo, New York
              March 24, 2006

**S/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**